# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

|  |  |
|---|---|
| NORTHERN ARAPAHO TRIBE, for itself and as *parens patriea*,<br><br>    Plaintiff,<br><br>v.<br><br>DARRYL LaCOUNTE, LOUISE REYES, NORMA GOURNEAU, RAY NATION, MICHAEL BLACK, and other unknown individuals in their individual and official capacities. | CV-16-11-BLG-BMM<br><br><br>ORDER |

## I. Procedural Background

Plaintiffs Northern Arapaho Tribe ("NAT") allege that Defendants violated their right to self-govern when Defendants converted NAT's funds and federal funds and programs established by Congress for the benefit of NAT. (Doc. 1.) NAT named Darrly LaCounte, Louise Reyes, Norma Gourneau, Ray Nation and Michael Black in their individual and official capacities. These Defendants ("Federal Defendants") hold positions with the Bureau of Indian Affairs ("BIA").

NAT initially named Darwin St. Clair and Clint Wagon, Chairman and Co-Chairman of the Shoshone Business Council ("SBC Defendants") in their individual and official capacities. NAT since has dropped the SBC Defendants from the case (Doc. 83.)

NAT seeks declaratory and injunctive relief along with the establishment of a constructive trust that would serve as a vehicle to recover allegedly converted funds. (Doc. 1 at 22–25.) NAT also filed a motion for preliminary injunction (Doc. 17.) Federal Defendants have filed a motion to dismiss the action on the grounds that: (1) the Court lacks subject matter jurisdiction, (2) NAT has failed to state a claim on which relief can be granted, and (3) NAT has failed to join an indispensible party. (Doc. 65.)

The Court has consolidated this case (CV 16-11) with a related, but different case (CV 16-60), concerning the BIA's declination of NAT's proposal to contract for judicial services (separate from the Eastern Shoshone Tribe). (Doc. 90.) This order concerns only the matters at issue in CV 16-11.

## II. Factual Background

The Shoshone Tribe and the United States entered into a Treaty on July 2, 1868. 15 State. 673. The treaty established the Wind River Reservation "for the absolute and undisturbed use and occupation of the Shoshonee Indians." 15 State.

673. The Eastern Shoshonee Tribe ("EST") settled in the Wind River Reservation. The United States placed NAT on the Wind River Reservation in 1878.

The tribes share the Wind River Reservation. Each tribe governs itself by vote of its tribal membership at general council meetings or by vote of its elected business council. *N. Arapaho Tribe v. Hodel*, 808 F. 2d 741, 744 (10th Cir. 1987). No member of one tribe may hold office or legislate for the other tribe. The tribes have not entered into a joint constitution to consolidate their respective governments. (Doc. 17-8.)

The federal government created the Joint Business Council ("JBC") following the Indian Reorganization Act of 1934. The federal government apparently considered it easier to interact with the two tribes' business councils in joint form. (Doc. 78-1.) The JBC originally contained the requirement that a quorum comprise four members from each tribe. (Doc. 1 at 11.) NAT formally withdrew its participation from the JBC in September 2014.

The Complaint alleges that the former SBC Defendants continue to operate the JBC and hold themselves out to third parties as having authority to act for both tribes. (Doc. 1 at 14–21.) EST allegedly changed the quorum for the JBC to require only four members from EST rather than the original requirement of four members from each tribe. (Doc. 1 at 11.) SBC Defendants allegedly have used the JBC to

move shared property, to transfer federal and tribal funds from a joint account to accounts solely controlled by the SBC, and to make important employment and personnel decisions that affect both tribes. (Doc. 1 at 18–21.)

NAT further alleges that SBC Defendants misappropriated joint 638 self-determination contracts. (Doc. 1 at 11–13.) Specifically, NAT alleges that Federal Defendants have entered into 638 self-determination contracts with the JBC without the necessary approval from NAT. (Doc. 1 at 12–13.) NAT alleges that Federal Defendants wrongfully have awarded 638 self-determination contracts to the JBC despite knowing that NAT had withdrawn from the JBC. (Doc. 1 at 17.)

The Indian Self-Determination and Education Assistance Act ("ISDEAA") governs these 638 self-determination contracts. The contracts allow tribes and tribal organizations to enter agreements with the federal government. The federal government supplies funding under 638 self-determination contracts to the tribal organizations to assume the administration of programs that the federal government otherwise would have administered on behalf of the tribe. *Hinsley v. Standing Rock Child Protective Services*, 516 F. 3d 668, 670 (8th Cir. 2008); *Manuel v. U.S.*, 2014 WL 6389572, at *5 (E.D. Cal. Nov. 14, 2014).

Norma Gourneau, BIA Superintendent for the Wind River Agency, sent a letter to both tribes' business councils on August 3, 2016. ("Gourneau Letter,"

Doc. 97-1.) Gourneau acknowledged that the BIA had approved self-determination contracts with SBC-as-JBC "on a temporary basis." *Id.* Gourneau also stated that the BIA no longer would accept contract proposals for shared programs from either tribe without supporting resolutions from both tribes. *Id.* Gourneau cited to 25 U.S.C. § 5304(l) for support. Title 25 U.S.C. § 5304(l) prohibits the BIA from "letting or making" a self-determination contract "to perform services benefitting more than one Indian tribe" without "the approval of each such Indian tribe."

### III. Federal Defendants' Motion to Dismiss

Federal Defendants argue the Court should dismiss the action on the following grounds: (1) that NAT's claim is moot, (2) that the Court lacks subject matter jurisdiction, and (3) that NAT has failed to state a claim upon which relief can be granted.

#### A.     Mootness

Federal Defendants point to the expiration of SBC-as-JBC's 638 contracts on September 30, 2016, as evidence that the claims are moot. (Doc. 96 at 19.) No party disputes the expiration of these 638 contracts. Federal Defendants also argue that the Gourneau Letter (Doc. 97-1) assures that no new 638 contracts will be awarded unless approved by both NAT and EST.

The Court must dismiss a moot case, or one that lacks a live controversy in which the parties have a stake. *West Coast Seafood Processors Ass'n v. Nat'l Res. Def. Council, Inc.*, 643 F.3d 701, 704-05 (9th Cir. 2011). The Court declines to accept the claim that the Gourneau Letter terminates this conflict. The Gourneau Letter lacks any apparent legal force. The BIA could change its position on the approval of these contracts at any time. This change would revive the controversy.

The Supreme Court has determined that dismissal on mootness grounds would be inappropriate in situations of voluntary termination of conduct. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000). The Supreme Court recognized that nothing stops the defendant from reengaging in the conduct at issue. *Id.* The lack of any binding nature of the Gourneau Letter leads the Court to determine that NAT's claims withstand a mootness challenge.

## B.    Subject Matter Jurisdiction: APA Right of Action

Federal Defendants argue that NAT must exhaust administrative remedies in order to gain a right of action under the APA. (Doc. 66 at 18.) NAT counters that the Federal Defendants acted *ultra vires*, or outside the bounds of the BIA's authority, in approving the 638 contracts. (Doc. 82 at 29.) NAT contends that the alleged *ultra vires* action by the Federal Defendants eliminates the need to exhaust administrative remedies. The Ninth Circuit and the U.S. Supreme Court have

determined that a defendant agency acting beyond its authority lessens or extinguishes the exhaustion requirements. *See Skinner & Eddy Corp. v. U.S.*, 249 U.S. 557, 562 (1919); *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958); *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil & Gas Conservation of State of Montana*, 792 F. 2d 782, 791 (9th Cir. 1986).

The Gourneau Letter seems to acknowledge that the BIA acted beyond its authority when it issued the 638 contracts. The Gourneau Letter defends the reasonableness of the BIA's approval, however, in light of its "hopes that the Tribe would resolve their dispute." (Doc. 97-1.) The Gourneau Letter concedes that the BIA no longer will accept contract proposals or proposals to operate shared programs without agreement between the tribes and "tribal resolutions from both Tribes." (Doc 97-1, citing 25 U.S.C. § 5403(l)).

The BIA lacks authority to issue a 638 contract for the Wind River Reservation without the approval of the EST *and* the NAT. 25 U.S.C. § 5304(l). An administrative agency's power "must always be grounded in a valid grant of authority from Congress." *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000) (quotations omitted). Congress clearly limited the BIA's authority in this regard as expressed in the caveat contained in § 5304(l). The statute's plain language seems to confirm that the BIA acted *ultra vires* in approving the contracts at issue. This Court may review the alleged *ultra vires* actions of the BIA even

though its decision to approve 638 contracts generally would be insulated from review. *Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Bd. Of Oil & Gas Conservation of the State of Montana*, 792 F.2d 782, 791 (9th Cir. 1986).

### C.      Subject Matter Jurisdiction: ISDEAA Right of Action

*i. ISDEAA*

Federal Defendants argue that NAT has failed to exhaust all administrative remedies that serve as a prerequisite to this Court's jurisdiction. The Ninth Circuit previously has interpreted 25 C.F.R., part 2, as a jurisdictional prerequisite to judicial review of any decision made by the BIA. *Faras v. Hodel*, 845 F.2d 202, 204 (9th Cir. 1988). The Ninth Circuit decided *Faras*, however, before Congress passed the 1994 Amendments to the ISDEAA (25 U.S.C. § 5331(a)), discussed in *Shoshone-Bannock Tribes of Ft. Hall Reservation v. Shalala*, 988 F. Supp. 1306 (D. Or. 1997).

Congress, in 1994, added to § 5331(a) the phrase permitting relief in court "to compel the Secretary to award and fund an approved self-determination contract" in order "to clarify the right of contractors to seek immediate judicial relief to review a declination finding or to secure the award and funding of an approved contract" without exhausting administrative remedies that could further delay the contracting process. 25 U.S.C. § 5331(a). The 1994 Amendments

provided "an additional remedy in federal district court" to address the "agencies' consistent failures over the past decade to administer self-determination contracts in conformity with the law." *Id*. at 1316. "Bureaucratic recalcitrance ultimately motivated Congress" to enact the 1988 and 1994 Amendments. *Id*. at 1315.

Courts require exhaustion of administrative remedies before a party seeks judicial review so that the "agency has an opportunity to exercise discretion and expertise on the matter and make a factual record to support its decision." *Tunica-Biloxi Tribe of La.*, 577 F. Supp. 2d at 406. Courts have developed exceptions to the non-jurisdictional exhaustion requirements when administrative review will not satisfy the purposes of the exhaustion doctrine. *Id*. (citing *Arizona v. Shalala*, 121 F. Supp. 2d 40, 50 (D.D.C. 2000)).

The BIA seems to think that the Gourneau Letter corrects any errors that it may have made in awarding the 638 contracts without the consent of NAT. The Gourneau Letter lacks legal force, and nothing prevents the BIA at this point from extending the 638 contracts for a further "temporary" period without the approval of NAT in an attempt to force NAT and EST to work out a compromise.

Congress did not invest the BIA with discretion to award 638 contracts that benefit more than one tribe without first obtaining the approval of both tribes. 25 U.S.C. § 5401(l). Nothing would be gained by forcing NAT to first seek the BIA's

expertise on a question over which it lacks authority. *Tunica-Biloxi Tribe of La v. U.S.*, 577 F. Supp. 2d at 407.

The 1984 Amendments reflect Congress's recognition that problems existed in the agencies' ability to administer self-determination contracts in conformity with the law. *Shoshone-Bannock Tribes of Fort Hall Reservation*¸ 988 F. Supp. at 1315-16. The Gourneau Letter seems to validate these concerns. Nothing would be gained by forcing NAT to exhaust any potential administrative remedies before seeking redress from the Court.

ii. <u>Contract Disputes Act Administrative Requirements</u>

Federal Defendants contend that any claims must be brought under the Contract Disputes Act ("CDA") once the BIA has awarded an ISDEAA contract. The CDA applies to "contract disputes between government contractors and the United States." *Pueblo of Zuni*, 467 F. Supp. 2d at 1103. Exhaustion under the CDA proves mandatory before federal court jurisdiction can exist. *Pueblo of Zuni*, 467 F. Supp. 2d at 1106; *SMS Data Products Group, Inc. v. U.S.*, 19 Cl. Ct. 612, 615 (Cl. Ct. 1990); *U.S. v. Intrados/Intl. Mgt. Group*, 277 F. Supp. 2d 55, 64 (D.D.C. 2003).

The CDA applies, however, only where the complaining party seeks monetary damages. *Pueblo of Zuni*, 467 F. Supp. 2d at 1109. NAT contends that it

seeks only declaratory and injunctive relief. (Doc. 1 at 23-25.) The Court must take all allegations of the non-moving party as true on a motion to dismiss. *See Stutson v. Bureau of Prisons*, No. 11-cv-3979, 2012 WL 1438982, at *2 (N.D. Cal. Apr. 25, 2012) (Rule 12(b)(1)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Rule 12(b)(6)); *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011) (Rule 12(b)(7)).

NAT's claims for declaratory and prospective injunctive relief differ from the money damages sought in *Pueblo of Zuni*. NAT challenges the BIA's authority to approve SBC-as-JBC's contracts. The CDA and its exhaustion requirements do not contemplate the type of claim for declaratory and injunctive relief presented by NAT.

### D.    EST as an Indispensable Party

Federal Defendants seek to dismiss NAT's claim due to its failure to join an allegedly indispensable party. The Court first must determine whether EST should be deemed a "necessary" party. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002) (citing Fed. R. Civ. P. 19(b))). The Court will then determine whether a necessary party should be deemed "indispensable." *Id.* A party proves indispensable when "in equity and good conscious" the court should dismiss the action rather than proceed without the necessary parties. *Id.*

The Court considers a party required if: (1) it cannot accord "complete relief among existing parties" in the party's absence, or (2) the party claims an interest that relates to the subject of the action, and proceeding with the suit in the party's absence would "impair or impede" the party's ability to protect that interest, or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Black*, 738 F.3d at 1125-26 (quoting Fed. R. Civ. P. 19(a)). The party's claimed interest must be "legally protected." *Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996).

Federal Defendants assert that EST possesses a legally-protected interest in the continuation of the 638 self-determination contracts with the BIA. NAT's Complaint seeks to enjoin the parties from using the contracts to manage services for NAT. A different case involving NAT and EST addressed whether EST should be considered a required party. *Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279 (10th Cir. 2012).

NAT brought a claim against state and county officials in Wyoming in which it sought to enjoin the imposition of certain taxes in an area that NAT contended qualified as Indian country. *Id.* at 1275. The complaint raised one issue—whether certain fee lands qualified as Indian country. *Id.* at 1277. The Court determined that EST represented a required party when it possessed an interest in

whether the fee land should be classified as Indian country. *Id*. at 1279. A determination of the land's status in EST's absence would impair or impede EST's interest when the status of the land would create "significant implications for the governance of the land and events occurring upon it." *Id*. The Tenth Circuit determined further that EST's absence would place the State of Wyoming in substantial risk of incurring multiple inconsistent obligations. *Id*.

EST possesses no similar interest in this action. NAT seeks to enjoin the SBC from purporting to act on its behalf. The Complaint alleges that the BIA has awarded 638 self-determination contracts to SBC members. The SBC members consist of EST tribal officials. The 638 self-determination contracts benefit both NAT and EST. NAT does not seek the award of contracts to the exclusion of EST. NAT seeks to manage its own services. EST possesses no legal interest in governing NAT. In fact, 25 U.S.C. § 5304(l) prevents one tribal organization from providing services that benefit more than one Indian tribe without the approval of both tribes. The Court declines to consider EST a necessary party.

## E.    Failure to State a Claim

The Court must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff when ruling on a motion to dismiss. *Cahill v. Liberty Mut. Ins. Co*, 80 F.3d 336, 338 (9th Cir. 1996). The Complaint must

allege sufficient facts to state a plausible claim for relief to survive a motion to dismiss. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

i. <u>Breach of Trust</u>

Federal Defendants claim that NAT has failed to point to a specific, statutory trust duty that the U.S. has violated with respect to NAT. *See, e.g., Gros Ventre Tribe v. U.S.*, 469 F.3d 801, 810-11 (9th Cir. 2006); *Hopland Band of Pomo Indians v. Jewell*, 624 F. App'x 562 (9th Cir. 2015). NAT alleges in the Complaint and in the Response Brief for this Motion to Dismiss that Federal Defendants violated: 25 U.S.C. § 450f(a)(1); 25 U.S.C. § 450b(1); and 25 U.S.C. § 476(f). (Doc. 82 at 40.) Further, NAT claims that trust duties can be implied from the federal-tribal relationship, and the Court should imply such a trust duty here. (Doc. 82 at 40.) (citing *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001)). The Court agrees and declines to dismiss NAT's breach of trust claim.

ii. <u>Conversion</u>

The Complaint alleges that SBC commandeered ISDEAA program funding and equipment. NAT alleges that SBC transferred federal and tribal funds of NAT to accounts controlled solely by SBC. (Doc. 1 at 19-20.) NAT alleges that SBC also took guns, ammunition, and equipment from the shared Fish and Game Department. (Doc. 1 at 20-21.) NAT alleges that the BIA ratified SBC's actions.

(Doc. 1 at 20.) The Court possesses authority to hear the state law conversion claim pursuant to its supplemental jurisdiction authority. 28 U.S.C. § 1367(a).

NAT has alleged sufficient facts to state probable claims for relief under these theories to survive a motion to dismiss. *Taylor*, 780 F.3d at 935. The Court, at this stage, must consider all of NAT's allegations as true. Federal Defendants will have the opportunity after further development of the record in this case to seek to prevail on these claims through a motion for summary judgment. It remains unclear whether the BIA has distributed all the funds associated with the 638 contracts. It also remains unclear whether the JBC has expended the funds actually distributed by the BIA. The answer to these claims may render moot many of the claims for monetary damages asserted by NAT.

### iii. Constitutional Violations

NAT argues that Defendants have violated the "one person, one vote" rule under the Equal Protection Clause. The rule requires that "the vote of any citizen" should be "approximately equal in weight to that of any other citizen." *Reynolds v. Sims*, 377 I.S. 533, 579 (1964). NAT contends that it lacks representation in the entity that the BIA has granted the ability to make decisions for their tribe despite its members making up the majority of the Wind River Reservation.

NAT further alleges that Federal Defendants unlawfully have diminished the privileges and immunities available to NAT in violation of 25 U.S.C. § 476(f). That section provides that:

> [d]epartments or agencies of the United States shall not promulgate any regulation or make any decision or determination . . . with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.

25 U.S.C. § 476(f).

The Court lacks sufficient information at this point to determine whether NAT presents viable constitutional claims. Federal Defendants may raise these issues through summary judgment motions once the parties have developed the record.

## IV. Plaintiff's Motion for Preliminary Injunction

NAT requests that the Court enjoin Federal Defendants from (1) representing that SBC possesses authority to take actions on behalf of NAT; and (2) approving unilateral action by SBC that affects NAT's property, assets, program decisions, personnel directive, budget approvals, or policy changes. (Doc. 17-1 at 35.)

A plaintiff who seeks a preliminary injunction must satisfy four requirements. The plaintiff first must establish that the plaintiff likely will succeed on the merits. Second, the plaintiff must establish that the plaintiff likely will suffer irreparable harm in the absence of preliminary relief. Third, the plaintiff must establish that the balance of equities tip in the plaintiff's favor. Fourth, the plaintiff must establish that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief constitutes an "extraordinary remedy" that never should be awarded as a matter of right. *Id.* at 22–24.

**A.** Likelihood of Success on the Merits

NAT argues that it likely will succeed on the merits of four different claims. The Court focuses on NAT's claim regarding Federal Defendant's alleged breach of trust.

i. Violations of Federally Protected Sovereign Rights and Breach of Trust

NAT contends that Federal Defendants violated 25 U.S.C § 5403(l) when Federal Defendants allowed SBC unilaterally to manage ISDEAA funds on behalf of NAT. The statute prohibits the BIA from approving a contract for "services benefitting more than one Indian tribe" when the BIA has failed to obtain approval from all such tribes. NAT claims that the Federal Defendants' approval of these 638 contracts constitutes a breach of trust.

EST and NAT do not operate under a "common sovereignty." *E. Shoshone Tribe v. N. Arapaho Tribe*, 926 F. Supp. 1024, 1031 (D. Wyo. 1996). EST argued in *Eastern Shoshone Tribe* that NAT's actions to establish its own housing authority without EST's permission violated the duties owed to EST by the BIA when EST stood as a common sovereign with coequal rights. *Id.* at 1027. The court rejected EST's "common sovereignty" argument. *Id.* at 1031. The tribes separately undertook a number of activities. *Id.* EST and NAT each enjoy its own sovereignty.

The United States's fiduciary responsibilities toward Indian Tribes applies to actions of the federal government. *Nance v. E.P.A.*, 645 F.2d 701, 711 (9th Cir. 1981) (citing *Seminole Nation v. United States*, 316 U.S. 286 (1942)). The Supreme Court has recognized that the federal government possesses a "distinctive obligation of trust" in its dealings with Indian people. *Seminole Nation*, 316 U.S. at 297.

The Supreme Court addressed this obligation in *Seminole Nation*. The federal government had promised to pay funds to members of the Seminole Nation. The federal government made payments instead to the United States Indian Agent for the Seminole Nation who allegedly misappropriated the funds. *Id.* at 294-95.

The Supreme Court determined that the federal government would have breached its duty of trust if it had made payments to "representatives faithless to their own people and without integrity." *Id*. at 297. The Supreme Court remanded the case for the district court to determine whether the federal government knew of the agents' corrupt reputation when it disbursed the funds to the agents and whether the members actually had received the benefits of the funds. *Id.* at 297-98.

NAT argues that awarding SBC contracts and funding to SBC for the benefit of both NAT and EST proves similar to awarding funds to "representatives faithless" to NAT's members. *Id*. at 297. SBC represents a separate tribe. EST members elect SBC officials. NAT members do not elect SBC officials. NAT argues that it possesses no control over its government if NAT has no members representing its interests on the JBC. NAT argues that these contracts essentially allow the SBC, and, in turn, the EST to control NAT's form of government.

Federal Defendants claim that NAT has failed to point to a specific, statutory trust duty that the Federal Defendants have violated with respect to NAT. Federal Defendants argue that NAT must demonstrate that a specific statutory trust duty exists. *See, e.g., Gros Ventre Tribe v. U.S.*, 469 F.3d 801, 810-11 (9th Cir. 2006); *Hopland Band of Pomo Indians v. Jewell*, 624 F. App'x 562 (9th Cir. 2015).

Section 5321(a)(1) of Title 25 of the U.S. Code authorizes the BIA to enter into a 638 contract with a "tribal organization." Section 5304(l) defines "tribal organization" and adds the following caveat:

> That in any case where a contract is let or grant made to an organization to perform services benefiting more than one Indian tribe, *the approval of each such Indian tribe* shall be a prerequisite to the letting or making of such contract or grant.

25 U.S.C. § 5304(l) (emphasis added).

The Gourneau Letter seems to acknowledge the BIA's failure to comply with the caveat in subsection (l) when it claims to have acted reasonably "to extend the self-determination contracts on a temporary basis in the hopes that the Tribes would resolve the dispute." (Doc. 97-1.) The Gourneau Letter further acknowledges that the BIA no longer will "accept proposals to operate shared programs from one Tribe or tribal organization without agreement between the Tribes on the operation of that program, as well as tribal resolutions from both Tribes." (Doc. 97-1, citing 25 U.S.C. § 5304(l)). NAT's claim that the Federal Defendants breached the duty of trust when they failed to comply with 25 U.S.C. § 5304(1) poses a sufficient likelihood of success to merit a preliminary injunction.

<u>ii. NAT's Other Claims:</u>

NAT alleges that Federal Defendants endorsed and encouraged the conversion of NAT's funds by awarding 638 contracts to SBC acting as JBC. NAT further argues that Federal Defendants "unlawfully subclassify the NAT" by not allowing it to govern itself. NAT argues Defendants' actions put NAT on an unequal footing with the EST. NAT further argues that Federal Defendants have violated the "one person, one vote" rule under the Equal Protection Clause. The rule requires that "the vote of any citizen" should be "approximately equal in weight to that of any other citizen." *Reynolds v. Sims*, 377 I.S. 533, 579 (1964). NAT argues that SBC's receipt of 638 self-determination contracts has deprived NAT of its right to vote in its government. The Court will defer resolution regarding the viability of these claims for relief until the parties further have developed the record.

## B. Threat of Irreparable Injury

A court typically grants a preliminary injunction when the plaintiff presents an urgent need for speedy action to protect plaintiff's rights. *Lydo v. Enterprises, Inc. v. City of Las Vegas*, 745 F. 2d 1211, 1213 (9th Cir. 1984). NAT must show that irreparable harm proves likely, not just possible, in order to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131 (9th Cir. 2011). NAT argues that violation of its federally protected rights to tribal sovereignty constitute irreparable harm. Harm to a tribe's sovereignty "cannot be remedied by any other relief other than an injunction." *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1034 (D. Ariz. 1993).

The Court finds most compelling NAT's claim of irreparable harm that would arise from future contract approvals. Federal Defendants claim that the BIA in the Gourneau Letter (Doc. 97-1) committed to no longer approving unilateral contracts without both tribes' approval. The BIA has committed to no legally binding policy that would prevent such approvals from happening in the future. The prospect of allegedly unlawful approvals in the future poses irreparable harm to NAT.

### C. Balance of Equities

NAT claims that the SBC possesses no legitimate interest in unilaterally managing shared 638 programs. Accordingly, Federal Defendants lack any legitimate interest in empowering the SBC to do so. (Doc. 17-1 at 32.) Federal Defendants argue that NAT's "vague" injunction would interfere with the Federal Defendants' ability to manage 638 contracts. (Doc. 68 at 32.)

NAT possesses a legitimate interest in its approval being required for shared tribal programs. This requirement harms no legitimate interest of the Federal

Defendants or the SBC. The Federal Defendants' proffered Gourneau Letter concurs. Defendant Gourneau promised that the BIA would implement NAT's proposed injunction by requiring approval from both tribes before awarding 638 contracts for shared programs as required under § 5304(l). NAT's gain from a preliminary injunction outweighs any loss suffered by Federal Defendants, especially when Federal Defendants seem willing to enact the injunction voluntarily.

### D. Public Interest

NAT claims that "tribal self-government is a matter of public interest." (Doc. 17-1 at 32,) citing *Sac and Fox Nation of Mo. v. LaFaver*, 905 F. Supp. 904, 907-08 (D. Kan. 1995). NAT argues that maintaining the integrity of the NAT Government by granting a preliminary injunction serves the public's best interest. Federal Defendants argue that a preliminary injunction would hamper the BIA's ability to administer contracts effectively. (Doc. 68 at 32.) No harm would inure to the public interest if the Court were to issue a preliminary injunction that tracked the terms of the Gourneau Letter (Doc. 97-1), and, more explicitly, the terms of § 5304(l). NAT has satisfied all requirements for preliminary injunctive relief.

Accordingly, **IT IS ORDERED:**

1. Defendants' Motion to Dismiss is **DENIED.**

2. Plaintiff's Motion for Preliminary Injunction is **GRANTED on the following terms:** in accordance with the Gourneau Letter (Doc. 97-1), Defendants shall refrain from approving 638 contracts for multi-tribal, shared services without the approval, via tribal government resolution, of both the Northern Arapaho Tribe and the Eastern Shoshone Tribe.

DATED this 17th day of October, 2016.

_____
Brian Morris
United States District Court Judge