# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| NORTHERN ARAPAHO TRIBE, for itself and as *parens patriea*, <br><br> Plaintiff, <br><br> v. <br><br> DARRYL LaCOUNTE, LOUISE REYES, NORMA GOURNEAU, RAY NATION, MICHAEL BLACK, and other unknown individuals in their individual and official capacities. | CV-16-11-BLGS-BMM and CV-16-60-BLGS-BMM (Consolidated) <br><br><br><br> **ORDER on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction** |

## I. Procedural Background

Plaintiffs Northern Arapaho Tribe ("NAT") allege that Defendants violated their right to self-govern when Defendants converted NAT's funds and federal funds and programs established by Congress for the benefit of NAT. (Doc. 1.) NAT named Darrly LaCounte, Louise Reyes, Norma Gourneau, Ray Nation and Michael Black in their individual and official capacities. These Defendants ("Federal Defendants") hold positions with the Bureau of Indian Affairs ("BIA"). NAT seeks declaratory and injunctive relief related to the awarding of self-

1

determination contracts along with the establishment of a constructive trust that would serve as a vehicle to recover allegedly converted funds. (Doc. 1 at 22–25.)

The Court has consolidated the above case (CV 16-11) with a related, but different case (CV 16-60), concerning the BIA's declination of NAT's proposal to contract for judicial services separate from the Eastern Shoshone Tribe. (Doc. 90.) NAT has filed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction in the consolidated cases. (Doc. 114.) NAT requests a TRO or preliminary injunction that essentially would restrict the court that the BIA has instituted on the Wind River Reservation (the "C.F.R. Court") from interfering with the NAT Tribal Court. *Id.*

## II. Factual Background

The Shoshone Tribe and the United States entered into a Treaty on July 2, 1868. 15 State. 673. The treaty established the Wind River Reservation "for the absolute and undisturbed use and occupation of the Shoshonee [*sic*] Indians." 15 State. 673. The United States resettled the Eastern Shoshone Tribe ("EST") on the Wind River Reservation. The United States forced NAT onto the Wind River Reservation in 1878.

The tribes share the Wind River Reservation. Each tribe governs itself by vote of its tribal membership at general council meetings or by vote of its elected business council. *N. Arapaho Tribe v. Hodel*, 808 F. 2d 741, 744 (10th Cir. 1987).

No member of one tribe may hold office or legislate for the other tribe. The tribes have not entered into a joint constitution to consolidate their respective governments. (Doc. 17-8.)

NAT and EST previously had authorized and implemented a joint tribal court system known as the Shoshone and Arapaho Tribal Court. (Doc. 127 at 16.) The BIA awarded 638 self-determination contracts to EST to provide the Shoshone and Arapaho Tribal Court with federal funds. The last 638 Contract awarded to fund the Shoshone and Arapaho Tribal Court expired on September 30, 2016. (Doc. 123 at 10.) NAT and EST then submitted separate 638 contract proposals to jointly operate the court. The BIA rejected these proposals on the basis that neither proposal had been approved by both tribes. *Id.*

The Shoshone Business Council ("SBC") purported to withdraw the EST's recognition of the Shoshone and Arapaho Tribal Court by Tribal Resolution on October 6, 2016. *Id.* at 11. The Tribal Resolution also requested that the BIA institute a Court of Indian Offenses ("CFR Court") on the Wind River Reservation. *Id.* The BIA instituted a CFR Court on the Reservation on October 18, 2016, and announced that "it was proposing a protocol to govern the allocation and transfer of cases" between the NAT Tribal Court and the newly established CFR Court. *Id.* The BIA and the NAT have since exchanged draft Memorandums of Understanding ("MOU") that outline protocol for the interactions between the two

3

court systems. NAT and the BIA have yet to agree or authorize an official MOU. *Id.* at 12.

The NAT submitted a proposal in January of 2016 for a separate 638 contract to fund judicial services provided by the NAT Tribal Court to NAT tribal members and others within the jurisdiction of the court. (Doc. 115 at 11.) The BIA denied this proposal in April of 2016. *Id.* The declination serves as the subject of the CV-16-60-BMM case that is consolidated here.

The Shoshone and Arapaho Tribal Court has operated out of Building 109 on the Wind River Reservation "for decades." (Doc. 115 at 23-24.) The parties dispute Building 109's ownership. NAT claims that it owns Building 109 as a quasi-tenancy-in-common with EST. The Federal Defendants claim that the BIA manages the building as federal property. (Doc. 127 at 17, 19.) The Federal Defendants have notified NAT that the NAT Tribal Court is no longer authorized to use Building 109 in light of the expiration of the 638 contract for judicial services that terminated on September 30, 2016. (Doc. 123 at 28-29.) NAT seeks to have the Court prevent the Federal Defendants from ejecting the NAT Tribal Court from Building 109 as part of its Motion for a TRO and Preliminary Injunction. (Doc. 114.)

### III. NAT's Motion for a TRO and Preliminary Injunction

<u>a. Scope</u>

Federal Defendants characterize the CV-16-11 case as a challenge to the BIA's award of 638 contracts to an EST-led body to fund shared tribal services for the 2016 fiscal year without NAT's consent. *Id.* at 13. Federal Defendants characterize the CV-16-60 case as a challenge to the BIA's declination of NAT's proposals for 638 contracts that would serve only NAT tribal members. *Id.* Federal Defendants claim that neither of these complaints concern the injuries alleged or the relief sought in NAT's Motion for a TRO and Preliminary Injunction. Federal Defendants assert that NAT's Motion alleges instead injuries to NAT's sovereignty as a result of the CFR Court's interference with the NAT Tribal Court. *Id.* As a result, Federal Defendants argue that the Court should deny NAT's Motion for a TRO and a Preliminary Injunction on the basis that it falls beyond the scope of either of the consolidated cases in this action. (Doc. 123 at 13-14.)

Federal Defendants cite three cases for the proposition that courts typically deny TRO motions "based on allegations and claims for relief that are unrelated to the complaint filed in the case." *Id.* at 13-14. Federal Defendants first point to *Allen v. Reid*, No. 15-1905, 2016 WL 3136859, at 4* (D. Minn. June 3, 2016). The court in *Allen* denied the plaintiff's Motion for a TRO on the basis that it included "several new allegations . . . unrelated to the denial of food alternatives and medical care" alleged in the complaint. *Id.* at 3*. Federal Defendants next cite to *Clark v. Bank of Am. N.A.*, No. 14-14-232, 2015 WL 1433834, at *8 (D. Idaho

5

Mar. 27, 2015). The court in *Clark* declined to consider the plaintiff's TRO or preliminary injunction because the plaintiff's motion raised "new arguments" that related broadly to the mortgage-centered conduct at the heart of her complaint, but raised new, specific allegations. *Id.*

Federal Defendants cite last to *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or. Oct. 4, 2010). The plaintiff in *Dennis* had filed a complaint alleging inadequate medical care at a prison facility. The plaintiff separately sought a TRO that would prevent the Bureau of Prisons from transferring him during the pendency of his lawsuit. *Id.* The court denied the plaintiff's motion in part because the relief he sought extended "beyond the scope of the allegations in his Complaint." *Id.*

NAT counters that the core dispute in the consolidated cases involves "whether the BIA can take actions that disregard the sovereign rights of NAT and its members." (Doc. 127 at 24.) NAT specifically claims that Federal Defendants seek to displace the NAT Tribal Court, and that Federal Defendants' actions constituting the displacement comprise this Motion for a TRO. *Id.* NAT asserts that the Motion for a TRO relates to the declination action because Federal Defendants will use the displacement of the NAT Tribal court to argue that the CFR Court rightfully has used all 638 contract funds allocated for NAT and EST.

6

*Id.* NAT alleges that the BIA justifiably would have denied NAT's 638 Contract proposal had all funds already been allocated to the CFR Court. *Id.*

NAT's characterization of the two consolidated cases and Motion for a TRO as challenges to the BIA's interferences with NAT sovereignty proves too broad. An attenuated connection exists between the declination action and the subject matter of the TRO. This weak relation fails, however, to place the Motion within the scope of the declination action complaint. The Court in *Clark* determined that a TRO alleging new injuries related to the mortgage subject matter of the complaint nevertheless fell outside of the scope of the complaint. *Clark,* 2015 WL at *8. The Court in *Dennis* also determined that new injuries contained in the motion for a TRO placed it outside of the scope of the complaint, even though the plaintiff credibly alleged that the potential injuries eventually could be traced back to the medical injuries set out in the complaint. *Dennis*, 2010 WL at *1.

NAT similarly alleges new interferences with its sovereignty in its Motion for a TRO. NAT asserts that Federal Defendants interfere with NAT's right to operate a tribal court with its own funds. The Federal Defendants' right, or lack thereof, to take allegedly interfering actions could affect the declination case to the extent that the Court would choose to circumscribe the CFR Court's budget. Such a circumscription could impose a duty on Federal Defendants to award remaining funds to the NAT Tribal Court through 638 contracts.

This potential effect on the declination action proves insufficiently direct, however, even if the Court were to limit the CFR Court's actions and budget. The declination action concerns ISDEAA and 638 contract awarding procedure. The Motion for a TRO concerns BIA regulations and the Federal Defendants' alleged interference with the NAT Tribal Court.

The Motion for a TRO and Preliminary Injunction and the consolidated declination action present distinct facts and address distinct governing statutes and regulations. The Court determines that the Motion for a TRO and Preliminary Injunction falls beyond the scope of either Complaint in this consolidated action.

b. Ripeness

Federal Defendants argue that only NAT's assertion that the NAT Tribal Court has a right to occupy Building 109 represents a ripe claim. (Doc. 123 at 14.) Federal Defendants assert that the Court possesses no jurisdiction over NAT's Motion based on the unripe nature of most of NAT's claims. *Id.* Federal Defendants cite to *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998), that outlines the relevant ripeness standard. The U.S. Supreme Court in *Ohio Forestry* directed that a court consider the following in determining whether a case is ripe: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further

8

administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Id.*

Other than NAT's Building 109 claim, all allegations in NAT's Motion concern the transfer and allocation of cases and case information between the NAT Tribal Court and the CFR Court. (Doc. 114.) Federal Defendants claim that NAT admits that the BIA and NAT currently are working to reach an agreement on an official MOU that would govern the interactions between the two courts. Doc. 123 at 14, citing Mem. At 8, 13; Doc. 115-8. The BIA, on behalf of the CFR Court, and NAT, on behalf of the NAT Tribal Court, have exchanged MOU drafts and continue to engage in discussions. (Doc. 123 at 12.) Federal Defendants assert that this ongoing dialogue would be interrupted and undermined were the Court to grant NAT's Motion for a TRO and Preliminary Injunction. *Id.* at 15. The Court agrees.

Negotiations concerning the operation of the two courts are ongoing. Interactions between the courts are, and will be, varied, continual, and context-specific. An order from the Court would prove an undesirable and perhaps unwieldy solution, particularly as opposed to a protocol negotiated by the parties. The Court especially is not the proper arbiter for the dispute while the parties continue to negotiate an MOU. An MOU would provide a set protocol that the

Court could evaluate. The addition of an MOU to the factual record would aid the Court in coming to a more accurate, useful resolution to the issues presented.

## IV. Conclusion

The Court concludes that NAT's Motion for a TRO and Preliminary Injunction falls beyond the scope of the complaints in either of the two consolidated cases in this action. The Court further determines that all of NAT's claims, except its claim to occupy Building 109, prove unripe.

Accordingly, **IT IS ORDERED:**

NAT's Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 114), is **DENIED.**

DATED this 7th day of March, 2017.

_/s/ Brian Morris_
Brian Morris
United States District Court Judge